FILED

2019 FEB -6 PM 3:27

U.S. DISTRICT COURT
N. DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) ) | |
| | ) | 1:19 CR 79 |
| v. | ) ) | CASE NO. _____ |
| | ) | Title 18, United States Code, |
| MARTIN FANO, | ) | Sections 1341, 1343, 1346, and 2 |
| | ) | |
| Defendant. | ) | |

JUDGE POLSTER

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

1. The City of Cleveland (hereinafter "the City") was a political subdivision within the State of Ohio.

2. The Cuyahoga County Land Reutilization Corporation ("CCLRC"), also known as the Cuyahoga County Land Bank, was a non-profit, government-purposed organization registered in the State of Ohio. CCLRC invited qualified demolition contractors from its list to bid on batches of properties to demolish.

3. A contractor performing demolition work in the City, both as part of a CCLRC project and for a private entity, was required to obtain permits from the City before the CCLRC or private entity would deem the job completed and issue payment.

4. Defendant MARTIN FANO owned and operated ABC Construction LLC ("ABC Construction"), a business that provided demolition and construction services, among other things, in the Cleveland, Ohio, area.

5. Defendant and his business performed demolition work for the City, CCLRC, and private parties.

6. Rufus Taylor ("Taylor") (charged separately) was employed by the City as the Chief of the Demolition Bureau and was an agent of the City. Among other responsibilities, Taylor was responsible for conducting inspections and for supervising others conducting inspections. A contractor performing demolition work in the City was required to pass two inspections, conducted by the Demolition Bureau, as part of any demolition job, including private jobs: (1) a sewer bulk and clean-hole inspection and (2) a final compliance inspection. If a contractor passed the final compliance inspection, Taylor or one of his subordinates signed the permit for the job. This final, signed permit was required before a contractor could receive payment for the job.

## COUNTS 1 – 7
(Honest Services Mail and Wire Fraud, 18 U.S.C. §§ 1341, 1343, 1346, and 2)

The Grand Jury charges:

7. The allegations contained in paragraphs 1 through 6 of this Indictment are incorporated by reference as if stated fully herein.

## The Scheme to Defraud

8. From in or around June 2016, and continuing through in or around January 2017, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARTIN FANO devised and intended to devise a scheme and artifice to defraud and to deprive the City and the

citizens of the City of their intangible right to the honest services of Rufus Taylor (charged separately), a City official, through bribery.

### The Purposes of the Scheme

9. The purposes of the scheme included, but were not limited to the following:

10. For Defendant to receive favorable official action from the City, in the form of faster service and favorable treatment, by paying Taylor bribes, so that Defendant could in turn obtain faster payment for demolition jobs, which gave Defendant a competitive advantage by being able to move on to other demolition jobs in a more timely manner than Defendant's competitors, and;

11. For Defendant to unlawfully benefit and enrich himself and Defendant's business through bribery of Taylor and the resulting favorable official action.

### Manner and Means of the Scheme

12. The manner and means by which Defendant carried out the scheme included, but were not limited to, the following:

13. Defendant gave, offered, and promised things of value to Taylor, including multiple cash payments, to obtain faster service from Taylor and the City of Cleveland.

14. Defendant made such payments to Taylor with the intent to influence, and in exchange for, official acts, including Taylor's own decisions and actions on matters, such as conducting inspections and issuing permits, and the scheduling of the same. Defendant and Taylor knew and intended that Taylor's advice would form the basis for official acts by other public officials that would benefit Defendant, and that Taylor would use his supervisory authority over other City employees to exert pressure on them to perform official acts that would benefit Defendant.

15. From time to time, Defendant offered to pay, and did pay, Taylor money in exchange for Taylor to use his official position to provide, and agree to provide, assistance in ensuring that work performed by Defendant's business would be quickly inspected after completion.

16. From time to time, Defendant offered to pay, and did pay, Taylor money in exchange for Taylor to use his official position to more quickly finalize and provide Defendant with the necessary signed permits for work performed by Defendant and his business.

17. From time to time, Defendant and Taylor spoke on the phone and in person to discuss Defendant's requests for action favorable to Defendant and Defendant's businesses. During some of these meetings, Defendant paid Taylor in cash.

18. Defendant used, and caused and directed others to use, interstate wire communications and mail delivered by the United States Postal Service.

### Acts in Furtherance of the Scheme

19. The acts caused by Defendant in furtherance of the scheme included, but were not limited to, the following:

20. Beginning in or around June 2016, and continuing through in or around January 2017, Defendant paid, and offered to pay, Taylor sums of cash.

21. In or around June 2016, Defendant submitted, and caused to be submitted, bids to CCLRC for demolition work at 909 East 72nd Street, Cleveland, Ohio ("909 East 72nd Street") and 9213 Marshall Avenue ("9213 Marshall Avenue"), Cleveland, Ohio.

22. In or around June 2016, CCLRC awarded ABC Construction the demolition work for 909 East 72nd Street and 9213 Marshall Avenue.

23. In or around June 2016, CCLRC issued ABC Construction a "Notice to Proceed" with the work for 909 East 72nd Street and 9213 Marshall Avenue. Pursuant to these "Notices to Proceed," ABC Construction was to complete the work at both locations on or before August 8, 2016.

24. In or around September 2016, Defendant agreed to perform demolition work at 12109 Castlewood Avenue, Cleveland, Ohio ("12109 Castlewood Avenue"), for a private client.

25. On or about August 16, 2016, Defendant obtained an extension to complete the work at 909 East 72nd Street and 9213 Marshall Avenue, until on or before September 23, 2016.

26. On or about August 29, 2016, Defendant sent, and caused to be sent, an email to CCLRC confirming that ABC Construction would start demolition at 909 East 72nd Street that day.

27. On or about August 30, 2016, Taylor, acting in his official capacity, conducted the clean-hole bulkhead inspection at 909 East 72nd Street and advised Defendant that he passed the clean-hole bulkhead inspection.

28. On or about September 20, 2016, Defendant sent, and caused to be sent, an email to CCLRC confirming that ABC Construction would start demolition at 9213 Marshall Avenue on September 21, 2016.

29. On or about September 20, 2016, Taylor, acting in his official capacity, conducted the clean-hole bulkhead inspection at 12109 Castlewood Avenue and advised Defendant that he passed the clean-hole bulkhead inspection.

30. On or about September 23, 2016, Taylor, acting in his official capacity, conducted the clean-hole bulkhead inspection at 9213 Marshall Avenue and advised Defendant that he passed the clean-hole bulkhead inspection.

31. On or about September 26, 2016, Taylor, acting in his official capacity, approved and signed the final compliance permit for 9213 Marshall Avenue.

32. On or about September 26, 2016, Defendant sent, and caused to be sent, an email to CCLRC, along with attachments, seeking payment for the work performed by ABC Construction at 9213 Marshall Avenue. These attachments included the final compliance permit signed by Taylor.

33. On or about September 28, 2016, Taylor, acting in his official capacity, approved the final compliance permit for 909 East 72nd Street.

34. On or about September 29, 2016, Defendant sent, and caused to be sent, an email to CCLRC, along with attachments, seeking payment for the work performed by ABC Construction at 909 East 72nd Street. These attachments included the final compliance permit signed by Taylor.

35. On or about September 30, 2016, Defendant met with Taylor and told Taylor that he "appreciated" Taylor for taking care of Defendant with the inspections, and then paid Taylor $200 cash.

36. On or about October 7, 2016, CCLRC sent Defendant, via the U.S. Mail, a check in the amount of $18,835, which included the initial payment for ABC Construction's demolition work at 909 East 72nd Street in the amount of $18,025.

37. On or about October 14, 2016, CCLRC sent Defendant, via the U.S. Mail, a check in the amount of $7,875, which was the initial payment for ABC Construction's demolition work at 9213 Marshall Avenue.

38. On or about October 19, 2016, Defendant sent, and caused to be sent, an email to CCLRC, along with an attachment, seeking payment for the remaining balance on the 909 East 72nd Street job.

39. On or about November 10, 2016, CCLRC sent Defendant, via the U.S. Mail, a check in the amount of $875, for ABC Construction's demolition work at 9213 Marshall Avenue.

40. In or around December 2016, Defendant paid Taylor an additional $60 cash in exchange for continued favorable treatment.

41. On or about January 6, 2017, CCLRC sent Defendant, via the U.S. Mail, a check in the amount of $975, for ABC Construction's demolition work at 909 East 72nd Street.

42. In or around January 2017, Defendant paid Taylor an additional $200 cash in exchange for continued favorable treatment, including Taylor's assistance with an electrical inspection at a property in which Defendant had a financial interest.

The Execution of the Scheme

43. On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Interstate Wire Communication |
|---|---|---|
| 1 | 9/26/16 | E-mail to CCLRC, with subject line "9213 Marshall Ave. Demo invoice," with attachments |
| 2 | 9/29/16 | E-mail to CCLRC, with subject line "909 E. 72 st. DEMO & CHANGE ORDER," with attachments |
| 3 | 10/19/16 | E-mail to CCLRC, with subject line "909 E. 72 St. retainage request," with attachment |

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

44.  On or about the dates listed below, in the Northern District of Ohio, Eastern Division, Defendant, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, used and caused to be used the United States mail and private and commercial interstate carriers to deliver the following items, each mailing constituting a separate count:

| Count | Approximate Date | Mailing |
|---|---|---|
| 4 | 10/7/16 | Check issued by CCLRC to Defendant and ABC Construction, in the amount of $18,835 |
| 5 | 10/14/16 | Check issued by CCLRC to Defendant and ABC Construction, in the amount of $7,875 |
| 6 | 11/10/16 | Check issued by CCLRC to Defendant and ABC Construction, in the amount of $875 |
| 7 | 1/6/17 | Check issued by CCLRC to Defendant and ABC Construction, in the amount of $925 |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.